(121 P.3d 990)
No. 92,972

JOE LITTLE, *Appellant*, v. STATE OF KANSAS, KANSAS BOARD OF TAX APPELAS, KANSAS BOARD OF HEALING ARTS, KANSAS DEPARTMENT OF TRANSPORTATION, OFFICE OF JUDICIAL ADMINISTRATION, DEPARTMENT OF ADMIN. LEGAL SECTION, KANSAS SECURITIES COMMISSION, WASHBURN ENDOWMENT ASSOCIATION, KANSAS BAR ASSOCIATION, and KANSAS LEGAL SERVICES, *Appellees*.

Opinion filed October 21, 2005.

*Joe Little*, appellant pro se.

*Steve Phillips*, assistant attorney general, for appellees State of Kansas, Kansas Board of Tax Appeals, Kansas Board of Healing Arts, Office of Judicial Administration, and Kansas Securities Commission.

*John M. Cassidy*, of Topeka, for appellee Kansas Department of Transportation.

*Shelley H. King*, of Topeka, for appellee Department of Administration, Legal Section.

*Teresa L. Sittenauer*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee Kansas Bar Association.

*Charles T. Engel*, of Cosgrove, Webb & Oman, of Topeka, for appellee Washburn Endowment Association.

*Thomas E. Wright* and *Melissa Kasprzyk*, of Wright, Henson, Clark & Baker, LLP, of Topeka, for appellee Kansas Legal Services.

Before ELLIOTT, P.J., MALONE and McANANY, JJ.

McANANY, J.: Joe Little appeals from the district court's order either dismissing or granting summary judgment against him on all of his claims that various entities violated the veterans' preference statute, K.S.A. 73-201. We affirm as to all defendants except the Washburn Endowment Association (WEA). We reverse the dismissal of WEA and remand the case for further proceedings.

Little filed suit, claiming that each of the defendants violated the veterans' preference statute, K.S.A. 73-201, by refusing to hire him. He asserts that he is an honorably discharged and disabled veteran and that he is qualified and competent to fill all the positions for which he applied. He claims that he applied for positions with the State of Kansas, Kansas Board of Tax Appeals (BOTA), Kansas Board of Healing Arts (BOHA), Kansas Department of Transportation (KDOT), Office of Judicial Administration (OJA), Department of Administration-Legal Section (DOA), Kansas Se-

curities Commission (KSC), Kansas Bar Association (KBA), Kansas Legal Services (KLS), and WEA.

Each defendant filed either a motion to dismiss, a motion for summary judgment, or a combined motion to dismiss or for summary judgment. The district court ruled adversely to Little on all the motions. Little now appeals. We will consider the motion of each defendant separately.

*WEA*

Little's allegations specifically directed at WEA are that WEA is a tax-exempt organization located at 1700 SW College Avenue in Topeka, Kansas, and that WEA "is so closely associated with Washburn University that it can be considered a government agency." WEA moved to dismiss under K.S.A. 60-212(b)(6), alleging Little failed to state a claim upon which relief could be granted. The district court agreed. Little claims the district court erred in determining K.S.A. 73-201 did not apply to WEA. This issue involves a question of statutory interpretation over which we have unlimited review. *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

In determining whether Little stated a cause of action against WEA, we apply the same standards as did the district court. We accept as true Little's description of the events, along with any reasonable inferences we can drawn from them. We view the facts in the light most favorable to Little and resolve all reasonable doubts in his favor. But this does not mean we must accept any conclusory allegations he may make on the legal effects of the events described in the petition if they do not reasonably follow from the events. The district court's dismissal is proper only if the allegations in the petition clearly show Little does not have a claim. See *312 Education Ass'n v. U.S.D. No. 312*, 273 Kan. 875, 881-82, 47 P.3d 383 (2002).

In considering this motion, we note that Little's attempt to "bootleg" facts into his argument did not require the district court to convert the motion to one for summary judgment under K.S.A. 60-212(c). See *Davidson v. Denning*, 259 Kan. 659, 666-67, 914 P.2d 936 (1996). Little cited nothing in the record to support his

claimed facts as required by Supreme Court Rule 141 (2004 Kan. Ct. R. Annot. 199). WEA confined its argument to the face of Little's pleading, and the district court correctly disregarded Little's purported facts.

The statutory basis for Little's suit is K.S.A. 73-201. This statute states:

"In grateful recognition of the services, sacrifices and sufferings of persons who served in the army, navy, air force or marine corps of the United States in world war I and world war II, and of persons who have served with the armed forces of the United States during the military, naval and air operations in Korea, Viet Nam or other places under the flags of the United States and the United Nations or under the flag of the United States alone, and have been honorably discharged therefrom, they shall be preferred for appointments and employed to fill positions in every public department and upon all public works of the state of Kansas, and of the counties and cities of this state, if competent to perform such services; and the person thus preferred shall not be disqualified from holding any position in said service on account of his age or by reason of any physical or mental disability, provided such age or disability does not render him incompetent to perform the duties of the position applied for; and when any such ex-soldier, sailor, airman or marine shall apply for appointment to any such position, place, or employment, the officer, board or person whose duty it is or may be to appoint a person to fill such place shall, if the applicant be a man or woman of good reputation, and can perform the duties of the position applied for by him, or her, appoint said ex-soldier, sailor, airman or marine to such position, place, or employment: *Provided,* That the provisions of this act shall not be applicable to any persons classed as conscientious objectors. The provisions of this act shall not be controlling over the provisions of any statute, county resolution or city ordinance relating to retirement, or termination on the basis of age, of employees of the state or any county or city. Whenever under any statute, county resolution or city ordinance retirement, or termination on the basis of age, of any employee is required at a certain age, or is optional with the employer at a certain age, such provisions of such statute, resolution or ordinance shall be controlling and shall not be limited by this section."

We focus our attention on that part of K.S.A. 73-201 which provides that qualified veterans "shall be preferred for appointments and employed to fill positions in every public department and upon all public works of the state of Kansas, and of the counties and cities of this state." Little does not contend that WEA is a public works entity of the State of Kansas, a county, or a city of the state; nor does he claim that WEA is a public department. Instead, he

claims WEA is so closely related to Washburn University that K.S.A. 73-201 should apply. Washburn University is not a party to this action.

Washburn University is not a state educational institution. Thus, it does not qualify as a separate state agency. See K.S.A. 76-711(a); K.S.A. 76-712. Little cites no authority, statutory or Kansas case law, to the contrary. As the district court correctly noted, Little's reliance on *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 73 L. Ed. 2d 482, 102 S. Ct. 2744 (1982), is misplaced since he makes no claim of deprivation of a federal constitutional right caused by the exercise of some right created by the State. Further, the reference in 42 U.S.C. §1983 (2000) to "under color of state law" contemplates a class of possible defendants far broader than the limited class defined in K.S.A. 73-201.

No Kansas statute brought Washburn University into being. As stated in *Associated Press v. Sebelius,* 31 Kan. App. 2d 1107, 1118, 78 P.3d 486 (2003):

"Although there is no single definition of the term 'state agency,' we find that any state agency, no matter how broadly defined, has two characteristics. First, the agency must be expressly created by statute. Second, the agency must be granted some express authority to act. Generally, state agencies administer, enforce, or interpret particular laws of the state, as authorized by the legislature. State agencies have decision-making authority and are not merely advisory groups."

Since Washburn University is not a state agency, any affiliation between WEA and Washburn University, regardless how close, cannot qualify WEA as a state agency.

That does not end the analysis. K.S.A. 73-201 also applies to city public departments. Washburn University was created as a municipal university pursuant to the Code of the City of Topeka, Kansas § 2-223 (2005); see K.S.A. 74-3201b(c). Little compares the relationship between WEA and Washburn University to that between Wichita State University and the Wichita State Physical Education Corporation (PEC) discussed in *Brown v. Wichita State University,* 217 Kan. 279, 540 P.2d 66 (1975), *vacated in part on other grounds* 219 Kan. 2, 547 P.2d 1015 (1976). We disregard Little's claimed factual similarity between *Brown* and the case now before

us. We are reviewing an order sustaining a motion to dismiss, not a grant of summary judgment. The issue is whether, under any set of facts, WEA could be "so closely associated with Washburn University that it can be considered a government agency" and be subject to the veterans' preference statute.

*Brown* dealt with the issue whether Wichita State University could be liable under respondeat superior for the acts of PEC which were claimed to have caused the death of members of the university's football team in an aircraft accident in the mountains of Colorado. The court in *Brown* did not analyze the facts under a piercing the corporate veil theory. Both Wichita State University and PEC were parties. The court was asked to pierce the corporate veil and thereby hold Wichita State liable for the acts of PEC. The court found such an analysis unnecessary, choosing to use an agency analysis to determine that Wichita State was liable under respondeat superior for the acts of its agent, PEC.

This is not the liability theory upon which Little bases his claim. He does not seek to impose vicarious liability on Washburn University for the acts of WEA. He has not sued Washburn University. His theory seems to be based on a piercing the corporate veil approach that would treat WEA and Washburn University as one and measure WEA's acts by standards that would otherwise apply only to Washburn University.

This raises the question whether the piercing the corporate veil theory can apply to a claimed "tax-exempt organization" and a municipal public university so that statutory mandates that apply only to the university can be imposed on the other organization. While *Brown* was not decided on this theory, the court noted by way of dicta: "Moreover, the facts disclose [Wichita State] University maintained such a close relationship with PEC so that [PEC] could be considered a mere instrumentality of the University." 217 Kan. at 289.

Piercing the corporate veil may apply not only in the traditional situation of a dominant sole shareholder and his or her captive corporation, but also to two corporations. In *Dean Operations, Inc. v. One Seventy Assocs.*, 257 Kan. 676, 681, 896 P.2d 1012 (1995), the court held:

"The fiction of separate corporate identities of two corporations will not be extended to permit one of the corporations to evade its just obligations; to promote fraud, illegality, or injustice; or to defend crime. Under circumstances where the corporate entity is disregarded, the parent corporation may be held liable for the acts of the subsidiary. . . . The courts will disregard the fiction of a separate legal entity when there is such domination of finances, policy, and practices that the controlled corporation has no separate mind, will, or existence of its own and is but a business conduit for its principal."

But here, we are not confronted with two corporations. While we do not know the nature of WEA, we do know that Washburn University was created by city ordinance, not by individual incorporators. The tests for piercing the corporate veil in *Dean Operations* do not fit the circumstances of WEA. We need to look beyond *Dean Operations* to see if the doctrine can apply to noncorporate entities.

In *Shriver v. Athletic Council of KSU*, 222 Kan. 216, 564 P.2d 451 (1977), the court found that a "mere instrumentality" of a state university was entitled to the immunity granted to the university under K.S.A. 46-901 (Weeks). This statute, since repealed, immunized the State and its agencies, departments, and others from being sued on certain claims. Since the appeal was from the grant of summary judgment in favor of the Athletic Council, the court's analysis was rather fact intensive. We need not dwell on those facts. It suffices to say that under the facts presented, the court concluded that "the Athletic Council is an instrumentality of Kansas State University. As such, it shares in the governmental immunity mandated by the legislature through K.S.A. 46-901." 222 Kan. at 219.

Based upon the reasoning in *Shriver*, logic compels us to conclude that if, as demonstrated in *Shriver*, an organization that is completely dominated by a university can enjoy the benefits of statutory immunity from suit otherwise available only to a state university, such an organization should also be subject to statutory duties that would otherwise only be imposed on the university. At this stage in the proceedings, we do not know if Little can show such overwhelming domination by Washburn University to succeed in his claim against WEA. Indeed, the standards for declaring

WEA to be the alter ego of Washburn University are formidable. Nevertheless, Little has asserted an actionable claim against WEA that may or may not bear fruit. The district court erred in dismissing Little's claim against WEA at this pleading stage.

*KLS*

KLS moved to dismiss or for summary judgment. According to the articles of incorporation referred to in KLS's statement of uncontroverted facts, which were not controverted by Little, KLS is a not-for-profit Kansas corporation formed by three individuals in 1977. Little's specific allegations in his petition about KLS are that it is "located in Shawnee" and "is so closely related to a government agency that it can be considered as one." He clarified in his response to KLS's motion that by "government agency" he meant "state agency." He argued that KLS is so closely related to the State of Kansas that it should be considered a state agency. Little conceded by silence the fact that KLS is not a creature of statute but rather a private corporation. Clearly, KLS does not fulfill the requirements of a state agency under *Associated Press*. See 31 Kan. App. 2d at 1118. The district court did not err in granting KLS's motion.

*KBA*

Little asserted in his petition that the KBA is "a Kansas State Agency." The KBA moved for summary judgment. It asserted as uncontroverted the fact that it, like KLS, is a private not-for-profit Kansas corporation. Little failed to controvert this fact in his response. The KBA's uncontroverted facts clearly place it outside the qualifications for a state agency as stated in *Associated Press*. Little's argument that the KBA qualifies as a state actor misses the mark. The statute is not so broadly drawn. The district court did not err in sustaining the KBA's motion.

*BOTA, OJA, KSC, and BOHA*

We will consider these defendants together since their involvement in this suit turns upon resolution of a common issue. The district court dismissed Little's claims against BOTA, OJA, KSC, and BOHA because Little failed to allege that he exhausted his

administrative remedies against them prior to suit. This requires an analysis of the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* Our review of the KJRA is unlimited. See *Cooper*, 277 Kan. at 252. Further, since at issue is the district court's jurisdiction to consider Little's claims, we have unlimited review over this issue. See *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005).

K.S.A. 77-606 states the KJRA "establishes the exclusive means of judicial review of agency action." K.S.A. 77-612 requires a plaintiff to exhaust administrative remedies before seeking judicial review of an agency action. K.S.A. 77-614(b)(5) requires a plaintiff to include "facts to demonstrate that the petitioner is entitled to obtain judicial review" in his or her petition.

Little failed to assert in his petition that he exhausted his administrative remedies against BOTA, OJA, KSC, and BOHA. He does not challenge the applicability of the KJRA to his claims. Instead, he claims the exhaustion of administrative remedies is an affirmative defense which these defendants failed to raise. Exhaustion of administrative remedies is a prerequisite to the district court having subject matter jurisdiction over the claim. See *Cole v. Mayans*, 276 Kan. 866, 870, 80 P.3d 384 (2003); *Pittsburg State University v. Kansas Bd. of Regents*, 30 Kan. App. 2d 37, 45-46, 36 P.3d 853 (2001), *rev. denied* 273 Kan. 1036 (2002). As stated in *Nichols v. Kansas Political Action Committee*, 270 Kan. 37, 40, 11 P.3d 1134 (2000): "Where the complainant has not alleged exhaustion of administrative remedies, a trial court considering motions to dismiss may properly rely on the absence of a showing in making a determination that plaintiff has not exhausted those remedies." In *In re M.K.D.*, 21 Kan. App. 2d 541, 545, 901 P.2d 536 (1995), the court stated:

"First, it is the duty of a court to determine whether it has subject matter jurisdiction. Whether the parties raise the question or not, the court must do so on its own motion. [Citations omitted.] When the record discloses a lack of subject matter jurisdiction, it is the duty of the court to dismiss the action. [Citation omitted.]"

The district court did not err in dismissing the claims against BOTA, OJA, KSC, and BOHA based upon the lack of subject matter jurisdiction.

## KDOT and DOA

KDOT and DOA moved to dismiss Little's claims against them on the grounds that he failed to file suit within 30 days of their final agency actions. The motions were really ones for summary judgment because the movants relied upon facts beyond the face of the pleadings. See K.S.A. 60-212(b). These defendants assert that DOA's final agency action was on November 24, 2003, and KDOT's final agency action was on December 4, 2003. In letters to Little on these dates, each agency advised him: "This notice constitutes a final agency action pursuant to the provisions of K.S.A. 77-601 *et seq.*" Little's action was filed on February 18, 2004, more than 30 days thereafter. Little does not contest these facts. He simply argues that no one told him about the 30-day filing requirement and that the 3-year limitation period in K.S.A. 60-512(2) should apply. The district court rejected these arguments and sustained the motions.

The 30-day limitation applies. In *Heiland v. Dunnick*, 270 Kan. 663, 19 P.3d 103 (2001), the plaintiff was laid off by the Kansas Savings and Loan Department, which was ultimately replaced by the Office of the State Bank Commissioner (SBC). Heiland filed suit against SBC claiming he was entitled to, and was denied, a preferential position on a reemployment list to pursuant to K.S.A. 75-2948. The district court dismissed his claim due to its untimely filing under the KJRA. In considering the applicability of the KJRA, the Kansas Supreme Court observed:

"The KJRA applies to all agencies and all proceedings for judicial review and civil enforcement of *agency actions* not specifically exempted by statute. [Citation omitted.] It establishes the exclusive means of judicial review of agency action. [Citations omitted.] 'The KJRA is the exclusive remedy for all requested relief which an agency can grant under its authority. Only actionable claims which fall outside the authority of an agency to grant can support a separate action by an aggrieved party.' [Citations omitted.]" 270 Kan. at 668.

The *Heiland* court also considered *Lindenman v. Umscheid*, 255 Kan. 610, 875 P.2d 964 (1994), and *Wright v. Kansas Water Office*,

255 Kan. 990, 881 P.2d 567 (1994), both of which Little relies upon. Finding that these cases did not control and that Heiland's sole remedy was under the KJRA, the court stated: "Unlike the tort and constitutional claims in *Lindenman* and *Wright*, Heiland's claims involve the SBC's failure to perform a statutory and regulatory duty benefitting state employees in Heiland's position. The SBC is a 'state agency,' as defined in K.S.A. 77-602(k)." *Heiland*, 270 Kan. at 669. Like Heiland, Little claims that state agencies failed to fulfill their statutory duty. Thus, the time for Little to file his claims was controlled by the KJRA.

Little's reliance upon *Pecenka v. Alquest*, 6 Kan. App. 2d 26, 626 P.2d 802, *rev. denied* 229 Kan. 670 (1981), is misplaced since this case was decided before the KJRA was enacted and the 30-day limitation was created.

Finally, on this point, K.S.A. 2004 Supp. 75-6103(a) does not afford Little any protection. He argues from this statute that the KJRA does not apply to his claims. K.S.A. 2004 Supp. 75-6103(a) applies only "under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." Private individuals are not subject to the preferential hiring requirements of K.S.A. 73-201. The statute does not apply.

Next, Little argues that if the KJRA applies to his claims, then he was entitled to an extension of time to file his petition under K.S.A. 77-613(b) and (d). K.S.A. 77-613(b) requires a petition for judicial review to be filed within the 30-day limit unless there is a request for reconsideration which is a prerequisite for review. Little made no request for reconsideration. K.S.A. 77-613(b) does not apply. K.S.A. 77-613(d) extends the 30-day filing deadline:

"(2)  during any period that the petitioner did not know and was under no duty to discover, or did not know and was under a duty to discover but could not reasonably have discovered, that the agency had taken the action or that the agency action had a sufficient effect to confer standing upon the petitioner to obtain judicial review under this act."

Little claims he did not know and was under no duty to know that he only had 30 days to file a petition for judicial review. He misreads the statute. The statute creates a safe harbor for claimants who did not know that an agency had taken action on the claim

that would invoke the claimant's right to judicial review. The letters from DOA and KDOT expressly stated that their decisions constituted final agency actions and cited K.S.A. 77-601 *et seq*. The letters also informed Little who and where he should serve the agencies if he sought judicial review. K.S.A. 77-613(d)(2) does not apply.

As stated in *W.S. Dickey Clay Mfg. Co. v. Kansas Corp. Comm'n*, 241 Kan. 744, 749, 740 P.2d 585 (1987): "The rule is well established that the time for taking an administrative appeal, as prescribed by statute, is jurisdictional and delay beyond the statutory time is fatal. [Citations omitted.]" The district court did not err in sustaining the motions of DOA and KDOT.

*State of Kansas*

The State of Kansas is the first named defendant in Little's petition. He does not refer to the State in his description of the parties. He does not refer to the State in the description of his cause of action. He proceeds upon the apparent basis that the mere naming of a party in the caption of the case is sufficient to withstand a motion to dismiss. It does not. Of course, Little does assert claims against agencies of the State. But since the claims against each of the state agencies he sued have now been determined to be without merit, any purported claim against the State necessarily fails. Thus, we need not review the various interesting issues presented to and considered by the district court on the State's motion, since they are all now moot. The district court did not err in dismissing the State of Kansas.

Reversed and remanded for further proceedings on the claim against WEA. Affirmed on all other grounds.

Affirmed in part, reversed in part, and remanded.